**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CYBERGUN, S.A., a French Corporation, and FN HERSTAL, S.A., a Belgian Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> JAG PRECISION, a California Corporation. <br><br> Defendant. | Case No. 2:12-cv-00074-APG-GWF <br><br> **ORDER DENYING PLAINTIFFS' AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT** <br><br> (Dkt. ##120, 133, and 139) |

Cybergun, S.A. and Jag Precision are competing sellers of airsoft guns—replica firearms that shoot plastic BBs instead of lead bullets. In 2010, Cybergun negotiated an intellectual property license with FN Herstal, S.A., a well-established firearm designer and manufacturer. The license made Cybergun the only airsoft seller authorized to manufacture and sell replicas of FN Herstal's popular firearm designs. In 2012, plaintiffs discovered Jag was selling unlicensed replicas of FN Herstal's designs, and filed this lawsuit alleging: (1) patent infringement, (2) copyright infringement, (3) trademark infringement, (4) trade dress infringement, (5) false designation, (6) deceptive trade practices, and (7) interference with business relations.

Jag has moved for summary judgment on all of plaintiffs' claims. (Dkt. #133.) Jag also seeks summary judgment on its counterclaim for patent invalidity, and its counterclaim for interference with prospective economic advantage, which relates to Cybergun's alleged interference with Jag's operations at a trade show. (*Id*.) Plaintiffs likewise moved for summary judgment on their claim of trade dress infringement (Dkt. #139) and on Jag's counterclaim of interference with prospective economic advantage (Dkt. #120).

Both Jag and plaintiffs have failed to establish that summary judgment is warranted on any of their claims or counterclaims, for the following reasons:

1. Jag's request for summary judgment on plaintiffs' patent and copyright infringement claims, and Jag's counterclaim for patent invalidity, are moot because I dismissed plaintiffs' patent and copyright claims.

2. There are triable issues as to elements of trade dress and trade mark infringement, including whether the asserted trade dress is nonfunctional, whether the marks and dress are distinctive, and whether Jag's products and marks are likely to confuse.

3. Given Cybergun's evidence that Jag knew it was selling replicas virtually identical to plaintiffs' designs, Jag has failed to meet its burden to establish a lack of triable issue regarding Cybergun's claims for false designation, deceptive practices, and interference with business relations.

4. There are triable issues as to whether Cybergun's interference at the trade show was improper and caused Jag harm.

## I.   BACKGROUND

Cybergun is the sole airsoft manufacturer licensed to manufacture and sell replicas of FN Herstal's firearm designs. FN Herstal and Cybergun are suing Jag for selling unlicensed airsoft replicas of FN Herstal's popular SCAR, M249, and P90 firearms.

In January, 2012, Jag and Cybergun were operating booths at the SHOT Show, a large gun trade show in Las Vegas.[1] During the show, plaintiffs filed their complaint against Jag and obtained a temporary restraining order.[2] That TRO prevented Jag from selling replicas of specific firearm designs.[3] Cybergun admits that plaintiffs timed the filing of the complaint and TRO to

---

[1] (Dkt. #133-16.)
[2] (Dkt. #11.)
[3] (*Id.*)

coincide with the SHOT Show, so that they could "maxim[ally] expos[e]" Jag's alleged infringement.[4]

Shortly after the TRO was signed, Cybergun met with SHOT Show organizers, requested that Jag's booth be closed, and told them:

> I have a temporary restraining order here. . . JAG Precision is selling counterfeit FN Herstal merchandise in their booth . . . Cybergun would like the booth closed. . . . And I can only give you what has been given to us by the Court . . . they have merchandise that has the FN Herstal name on it in the booth. I've seen it myself this morning, and we'd like it closed down.[5]

Jag's evidence indicates it was not displaying any replicas covered by the TRO at the SHOT Show.[6]

Eventually, plaintiffs obtained a preliminary injunction against Jag, which was affirmed on appeal.[7] On September 26, 2014, I granted plaintiffs' motion to voluntarily dismiss their copyright and patent infringement claims.[8] The parties have conducted extensive discovery and motion practice.

## I. LEGAL STANDARD - SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

---

[4] (Dkt. #133-16, at 26.)

[5] (*Id.* at 12.)

[6] (Dkt. ##18-1; 133, at 8-9.)

[7] (Dkt. #26.)

[8] (Dkt. #207.)

law."[9] For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[10]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[11] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[12] He "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[13]

A party seeking to either support or refute the assertion of a fact in a summary judgment context must do so with admissible evidence.[14] As the summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence that would be admitted at trial;[15] thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity.

---

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[10] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[12] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[13] *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[14] Fed. R. Civ. 56(c)(1); *Orr*, 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.,* 2009 WL 648899, at *2 (D. Ariz. Mar. 10, 2009).

[15] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

<mark>Case 2:12-cv-00074-APG-GWF   Document 210   Filed 12/19/14   Page 5 of 17</mark>

## II. DISCUSSION

### A. Plaintiffs' claims for patent and copyright infringement, and Jag's counterclaim for patent invalidity

I previously dismissed plaintiffs' copyright and patent infringement claims with prejudice.[16] Jag's request for summary judgment on plaintiffs' copyright and patent infringement claims is thus moot.

As I explained in my previous order, while I declined to dismiss Jag's invalidity counterclaim, whether it will ultimately be successful is another matter.[17] Jag must establish that it has a sufficient interest to seek a declaration of invalidity now that the patent claims have been dismissed with prejudice. Jag's bare assertion its customers may be threatened is insufficient to support a declaration of invalidity.[18] Summary judgment on patent invalidity is thus not appropriate.

### B. Plaintiffs' trademark infringement claims

To establish trademark infringement, plaintiffs must prove (1) their marks are valid, and (2) there is a likelihood consumers will confuse Jag's marks with plaintiffs' marks.[19]

#### i. Validity

To be valid, a mark must be sufficiently distinctive. "[S]uggestive, arbitrary, and fanciful marks are 'deemed inherently distinctive and are automatically entitled to protection because they

---

[16] (Dkt. # 207.)

[17] (*Id.*)

[18] *Furminator, Inc. v. Ontel Products Corp.*, 246 F.R.D. 579, 590 (E.D. Mo. 2007) ("A claim of invalidity based on prior art, however, cannot serve as a basis for declaratory judgment jurisdiction, as it does not establish the existence of an actual controversy between the parties of sufficient immediacy and reality to warrant declaratory relief."). Jag fails to analyze standing, and merely argues that Cybergun admits to the existence of invalidating prior art. (Dkt. #133, at 16.)

[19] *Brookfield Comm's, Inc. v. West Coast Entm't*, 174 F.3d 1036, 1046 (9th Cir.1999).

<mark>Page 5 of 17</mark>

naturally serve to identify a particular source of a product.'"[20] If a mark is not so arbitrary as to be inherently distinctive, it may become distinctive by acquiring secondary meaning with consumers.[21] A mark acquires "secondary meaning" if it has come to be "uniquely associated with a specific source" by consumers.[22] "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity; manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant."[23]

Jag argues all of plaintiffs' marks are invalid because they are not sufficiently distinctive, but provides substantive argument only as to plaintiffs' unregistered M249 mark. I therefore consider Jag's validity arguments directed to the M249 mark only. Jag argues plaintiffs cannot establish the M249 mark is distinctive because (1) plaintiffs have not conducted a survey or provided consumer testimony, and (2) plaintiffs have not always used the mark exclusively.[24] While I agree these facts are relevant to the distinctiveness inquiry, they are not dispositive. The M249 mark appears to be arbitrary and thus "inherently distinctive."[25] Even if it is not, plaintiffs have provided sufficient evidence to create a triable issue regarding whether the mark has

---

[20] *Quiksilver, Inc. v. Kymsta Corp.,* 466 F.3d 749, 760 (9th Cir. 2006).

[21] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 (1992).

[22] *Id.*

[23] *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

[24] The parties dispute the admissibility of various website printouts Jag uses to support its exclusivity argument. Some of these documents indicate that Cybergun may occasionally sell M249 replicas without affixing the respective mark. But even if I consider these documents as admissible evidence, Jag has not conclusively established a lack of a triable issue as to secondary meaning. (Dkt. #133, at 12.) Jag's evidence does not indicate how often Cybergun has failed to designate, or for how long. This evidence does not prove consumers failed to associate plaintiffs' designs with a single source.

[25] *See Quiksilver,* 466 F.3d at 760.

acquired secondary meaning with consumers. This evidence includes, for example: extensive sales and marketing data, evidence of Jag's intentional copying, and plaintiffs' lengthy use of the mark.[26] Jag provides no authority that requires plaintiffs to provide survey or direct consumer evidence to establish secondary meaning. Plaintiffs have demonstrated a triable issue as to whether its marks were sufficiently distinct.[27]

### ii. Likelihood of confusion

To determine the whether consumers are likely to confuse a defendant's mark with a plaintiff's, courts consider eight factors: (1) strength of the mark; (2) proximity of the goods in the market; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines.[28]

Jag relies on plaintiffs' scarce evidence of actual confusion to argue that there is no likelihood consumers will confuse Jag's products with plaintiffs' marks. Jag points out that plaintiffs have not conducted a survey nor provided any documentation proving consumers actually mixed up the parties' marks.[29] But plaintiffs have submitted evidence indicating Cybergun received customer reports of confusion.[30] Further, "actual confusion" is only one factor among the eight bearing on the likelihood of confusion.[31] Plaintiffs have provided extensive evidence related to the other factors—factors largely ignored by Jag—such as the

---

[26] *See, e.g.,* (Dkt. ##20 at ¶ 15; 141, at 73-90; 20-8.)

[27] Plaintiffs appear to request that I find the M249 mark distinctive as a matter of law, but plaintiffs have not moved for summary judgment on this question.

[28] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 344 (9th Cir. 1979).

[29] Jag mentions plaintiffs have insufficient evidence of *likelihood* of confusion, but cabins its substantive analysis to evidence of *actual* confusion. (Dkt. #133, at 12-13.)

[30] (Dkt. #141, at 116.)

[31] *Sleekcraft Boats*, 599 F.2d at 344.

strength of their mark, similarity of the marks, and Jag's intent in selecting the mark.[32]  Thus, there are triable issues regarding both distinctiveness and likelihood of confusion.[33]  I therefore deny Jag's motion for summary judgment on plaintiffs' trademark infringement claim.

### D. Plaintiffs' false designation and deceptive trade practices claims

Jag provides only conclusory arguments in seeking summary judgment on plaintiffs' false designation and deceptive trade practices claims.  Regarding the false designation claim, Jag argues there is no evidence any consumers relied on a false designation or that plaintiffs were harmed.  But in support of this argument, Jag cites only to a disputed discovery response[34] and a statement by FN Herstal that it did not believe the airsoft market was viable before June 2010.[35]  Jag has not met its burden to show an absence of a triable issue.[36]  Jag does not address plaintiffs' testimony that actual consumer confusion occurred, or that, after 2010, plaintiffs believed the market was viable and could then suffer damages.

As to plaintiffs' deceptive trade practices claim, I again find triable issues.  Under Nevada Law, a defendant is liable for deceptive trade practices where it "[k]nowingly makes a false representation as to the source, sponsorship, approval or certification of goods."[37]  Jag argues,

---

[32] *See, e.g.,* (Dkt. ##140-12; 141, at 32-42.)

[33] Jag also suggests, in cursory fashion, that plaintiffs have provided insufficient evidence of damages.  But Jag provides no reason plaintiffs will be precluded from using their expert report to support a calculation of trademark damages. (Dkt. #164, at 10-11.)

[34] Plaintiffs argue that this discovery response is no longer probative because it was an early response that has been supplemented.

[35] (Dkt. #133, at 24.)

[36] "At trial, a plaintiff must produce evidence in support of its claim in order to carry its ultimate burden of persuasion. But at summary judgment, a nonmoving party plaintiff has no obligation to produce anything until the moving party defendant has carried its initial burden of production." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1107 (9th Cir. 2000).

[37] Nev. Rev. Stat. Ann. § 598.0915.

without citation to admissible evidence, that it has established Jag did not know it was infringing. This is insufficient to meet Jag's burden on summary judgment.[38] Regardless, plaintiffs have submitted evidence that Jag knew of plaintiffs' marks, intentionally sold replicas of plaintiffs' alleged trade dress, and that Jag was on notice of the alleged infringement when it received Cybergun's demand letter in 2010.[39] I deny Jag's request for summary judgment on both the false designation and deceptive trade practices claim.

**F.     Plaintiffs' claim for alleged interference with business relations**

To prove interference with prospective business relations under Nevada law, a plaintiff must establish: (1) a prospective contractual relationship existed between the plaintiff and a third party; (2) the defendant knew of this prospective relationship; (3) the defendant intended to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.[40] Jag argues that "Plaintiffs have not alleged anything other than conclusory and implausible facts showing that Defendants were aware of a prospective relationship with any third party."[41] I find there is a genuine dispute about whether Jag was aware of prospective relationships between Cybergun and third parties. Jag and Cybergun are direct competitors in the airsoft market, and Jag is aware the Cybergun had prospective clients in that market.[42] When moving for judgment on its own

---

[38] *Celotex Corp.*, 477 U.S. at 330.

[39] *See, e.g.,* (Dkt. #141, at 24-45.)

[40] *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 88 (Nev. 1987).

[41] (Dkt. #133, at 26.)

[42] (Dkt. #141, at 38, 41-42.)

counterclaim, Jag argues Cybergun was aware of Jag's prospective clients at the SHOT show.[43] Jag fails to explain why it would not have similar knowledge of Cybergun's prospective clients.

### G. Plaintiffs' claim for disgorgement of profits under 15 U.S.C. § 1117(a)

A plaintiff may recover an infringer's profits under the Lanham Act: (1) where the infringer is willful, or (2) as a measure of compensatory damage for the plaintiff's own losses.[44] "[A] determination of damages in a trademark infringement action, including [recovery of profits], is to be pursued in light of equitable considerations."[45]  I find there are genuine issues of fact material to whether plaintiffs are entitled to disgorgement of Jag's profits.  For example, Jag admits to intentionally selling knock-offs of FN Herstal's weapons.[46]  Jag allegedly continued to infringe after being directly informed of plaintiffs' allegations in 2010, when Cybergun sent a demand letter.[47]  A reasonable juror could find willful infringement based on the evidence submitted, despite Jag's assurances that it "did not believe that FNH has any protectable design rights."[48]

### H. Cross-motions for summary judgment on plaintiffs' trade dress claims

Plaintiffs have moved for summary judgment that Jag infringed plaintiffs' trade dress rights.  Jag has moved for summary judgment that it did not infringe.  To prove trade dress infringement, plaintiffs must establish (1) that their design is distinctive, (2) their design is nonfunctional, and (3) "there is a likelihood of confusion that the consuming public will confuse

---

[43] (Dkt. #133, at 27.)

[44] *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986).

[45] *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1404 (9th Cir. 1993).

[46] *See, e.g.,* (Dkt. #141, at 29, 31, 32, 39, 40, 43.)

[47] (Dkt. #140-11).  While Cybergun's demand letter was not detailed, Jag was at least informed that infringement of FN Herstal's firearms was alleged.  The fact that Jag sent general denial letters back to Cybergun does not conclusively prove Jag believed it was not infringing.

[48] (Dkt. #194, at 16-17.)

[the plaintiff's] and the defendant's products."[49]  Plaintiffs have established triable issues as to each of these elements, precluding summary judgment for Jag.  Jag has similarly established triable issues at least to distinctiveness, precluding summary judgment for plaintiffs.

### i. Distinctiveness

Generally, a product design is distinctive trade dress only if it has acquired secondary meaning with consumers so that consumers associate the design with a single source.[50]  The parties have raised triable issues regarding this element.  Viewing the evidence in the light most favorable to Jag, plaintiffs rely on declarations from biased employees[51] and failed to conduct consumer surveys. There is little evidence consumers associated plaintiffs' firearm designs with a single source.[52]  I find Jag has raised a triable issue on distinctiveness.

But, on the other hand, viewing the evidence in a light most favorable to plaintiffs, they have similarly raised triable issues on this element.  Plaintiffs have submitted evidence relevant to several of the factors I must consider when determining secondary meaning, including sales, advertising, length of use, and notoriety.[53]  A reasonable juror could find that consumers associate

---

[49] *Disc Golf Ass'n v. Champion Discs, Inc.,* 158 F.3d 1002, 1005 (9th Cir. 1998).

[50] *Maljack Prod., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 887 (9th Cir. 1996).

[51] The Ninth Circuit has cautioned against relying on self-serving declarations to find secondary meaning.  *See, e.g., Filipino Yellow Pages, Inc.,* 198 F.3d at 1151.

[52] A showing of secondary meaning requires that consumers associate trade dress with a single source, as opposed to multiple sources. *Secular Organizations for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125, 1130 (9th Cir. 2000); *see* (Dkt. #169, at 9-14.)

[53] *See, e.g.,* (Dkt. ##20 at ¶ 15; 141, at 74-105; 20-8; 20-11.)

plaintiffs' popular firearm designs with a single source.[54]  Thus, there remain genuine issues of fact material as to this element.[55]

### ii.     Nonfunctionality

Plaintiffs assert that their products' overall configurations and designs constitute protectable trade dress.  "The physical details and design of a product may be protected under the trademark laws only if they are nonfunctional."[56]  Whether an asserted trade dress design is nonfunctional is a question of fact.[57]  If a product was assembled or configured, as a whole, because it works better in that shape, the overall design is functional—also referred to as *de jure* functionality.[58]  Courts consider whether a product's overall design is "the actual benefit that the customer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored or endorsed a product."[59]  A product's overall design is more likely to be functional "if [its] exclusive use . . . would put competitors at a significant, non-reputation-related disadvantage."[60]  Four factors may aid in determining functionality: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether

---

[54] There is little evidence indicating consumers associate plaintiffs' firearm designs with FN Herstal or Cybergun, but secondary meaning only requires consumers associate trade dress with a single source—consumers need not know the source's identity. *Id.*

[55] Plaintiffs are therefore not entitled to summary judgment, regardless of whether the other elements of trade dress infringement are met.  I need not reach whether Jag has created a triable issue as to the remaining elements of Plaintiffs' trade dress claim.  But because Jag could be entitled to summary judgment if there were no triable issues regarding the other trade dress elements, I must still consider these remaining elements for purposes of Jag's motion.

[56] *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.,* 199 F.3d 1009, 1011 (9th Cir. 1999) (citation omitted).

[57] *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.,* 668 F.3d 677, 683 (9th Cir. 2012).

[58] *Id.*

[59] *Leatherman Tool Grp., Inc.,* 199 F.3d at 1012.

[60] *Qualitex Co. v. Jacobson Prods. Co., Inc.,* 514 U.S. 159, 165 (1995).

advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture."[61]

Plaintiffs have provided evidence raising triable issues about whether their trade dress is nonfunctional. Plaintiffs have submitted evidence, including admissions by Jag's president, which indicate that their products' overall configurations and designs are desired because of their reputational value, not because their products' overall design is an "actual benefit that the customer wishes to purchase."[62] Plaintiffs have also submitted evidence indicating companies would suffer little competitive disadvantage from selling alternative designs.[63] Plaintiffs' evidence indicates the asserted trade dress may have ornamental elements.[64] Plaintiffs were also awarded a design patent, which is further evidence of nonfunctionality.[65] I find there is sufficient evidence raised to create a genuine issue of fact material as to whether plaintiffs' asserted trade dress is nonfunctional.

### iii.   Likelihood of confusion

The same eight factors used to determine likelihood of confusion for trademarks are used to determine likelihood of confusion for trade dress. I find triable issues here for the same

---

[61] *Id.*

[62] (Dkt. #141, at 31, 39.)

[63] (Dkt. # 20, at ¶¶ 32, 34.) Jag suggests that when considering whether competitors are at a disadvantage in being unable to copy a design, I may consider only competitors in the firearm market. But Jag offers no legal authority indicating that I am restricted in which competitive markets I may consider.

[64] (Dkt. ##20, at ¶ 31-34; 43, at ¶ 4.) Jag has moved to exclude portions of plaintiffs' testimonial evidence because it allegedly relies on inadmissible expert testimony. I have not yet decided whether any of plaintiffs' submitted testimony is expert in nature, nor have I decided whether any testimony should be excluded. Regardless of whether the disputed testimony is admissible, plaintiffs have raised a triable issue as to functionality.

[65] *Secalt S.A.,* 668 F.3d at 685; McCarthy on Trademarks and Unfair Competition, § 7:93 (4th ed. 2010).

reasons I found triable issues regarding plaintiffs' trademark claims. Plaintiffs have provided evidence raising triable issues at least as to the strength of their mark, similarity of the marks, and Jag's intent in selecting the mark.[66] Plaintiffs also have submitted evidence indicating Cybergun received customer reports of confusion.[67]

### iv. Conclusion

The parties have raised triable issues regarding whether plaintiffs' asserted trade dress is distinctive. Plaintiffs have further raised triable issues regarding whether their asserted trade dress is nonfunctional, and whether Jag's products are likely to confuse consumers. Therefore, summary judgment on the trade dress claims is not warranted for any party.

### H. Cross-motions on Jag's counterclaim for intentional interference with prospective economic advantage

As explained above, to prove intentional interference with prospective business relations, a plaintiff must establish: (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the defendant's intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.[68]

Cybergun moves to dismiss, or, alternatively, for summary judgment on Jag's counterclaim for interference with prospective economic advantage. Jag moves for summary judgment that Cybergun is liable for this claim. Triable issues preclude summary judgment for either party.

---

[66] *See, e.g.,* (Dkt. ##140-12; 141, at 32-43.)

[67] (Dkt. #141, at 116.)

[68] *Leavitt v. Leisure Sports Incorporation*, 103 Nev. 81, 88 (Nev. 1987).

### i. Cybergun's motion to dismiss for failure to state a claim

Cybergun argues for dismissal because Jag titled its counterclaim as a "negligence" claim, and Nevada does not recognize negligent interference claims. Jag responds that, although it misnamed its claim, it pleaded facts sufficient to support an intentional interference claim. The United Stated Supreme Court recently explained that the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of [a] legal theory."[69] Rather, the touchstone of a valid pleading is its *factual* sufficiency.[70]

Jag's failure to explicitly state it was claiming "intentional" interference is irrelevant. It alleges facts that state a claim for intentional interference. Jag alleges Cybergun knew Jag had prospective customers at the SHOT show, that Cybergun took pictures of Jag's booth and thus knew no products on display violated the TRO,[71] and that Cybergun misrepresented the scope of the TRO which resulted in Jag's removal.[72] I therefore deny Cybergun's motion to dismiss.

### ii. Cross-motions for summary judgment

Cybergun alternatively argues Jag cannot prove that (1) Cybergun's acts caused harm to Jag, (2) that Jag suffered any harm, or (3) that Cybergun's actions were unjustified.[73] The facts, viewed in a light most favorable to Jag, raise a genuine dispute about each of these elements. First, a reasonable juror could find that Cybergun's discussions with SHOT show personnel substantially contributed to Jag being removed from the show. Cybergun told SHOT Show personnel that a TRO had been issued, that Jag was selling "counterfeit" merchandise, and that

---

[69] *Johnson v. City of Shelby, Miss.*, No. 13-1318, 2014 WL 5798626, at *1 (U.S., Nov. 10, 2014).

[70] *Id.*

[71] (Dkt. #37, at ¶81.)

[72] (*Id.* at ¶84.)

[73] (Dkt. #120, at 19.)

Cybergun wanted Jag's booth closed.[74] Regardless of whether SHOT Show personnel also spoke with Jag, a reasonable juror could find that Cybergun's statements were a substantial factor in the SHOT Show's decision to remove Jag.

Second, there is a triable issue regarding whether Jag was harmed by being removed from the SHOT Show. Jag was removed from a trade show in front of potential customers and competitors. If nothing else, Jag lost whatever sales it would have made during the remainder of the SHOT Show in 2012.

Finally, there are triable issues regarding whether Cybergun's actions were improper. The TRO prevented JAG from selling only SCAR replicas. Immediately after telling officials a TRO has been granted, Cybergun told SHOT Show personnel that Jag was selling "counterfeit" merchandise. Jag has provided evidence indicating it was not, in fact, displaying any merchandise covered by the TRO. A reasonable juror could find Cybergun misrepresented that the TRO covered merchandise Jag was displaying at the show. If a jury believes Cybergun knew Jag was not violating the TRO, a reasonable juror could find that Cybergun was not justified in making its representations to the SHOT Show personnel.

On the other hand, viewing the evidence in a light most favorable to Cybergun, it has raised triable issues as to these elements, precluding summary judgment for Jag. For example, a reasonable jury could find Jag was not actually harmed by being excluded from the SHOT Show, or that Cybergun did not intentionally mislead the SHOT Show organizers. Much depends on the weight given to the testimony of the witnesses, and credibility is for the jury to determine.

Therefore, neither party has established a lack of triable issues regarding Jag's intentional inference claim. I therefore deny both parties' motions for summary judgment on this claim.

---

[74] (Dkt. #133-16, at 12-13.)

### III. **CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' motion for summary judgment on its trade dress claim (Dkt. #139) and motion to dismiss or alternatively for summary judgment on Defendant's counterclaim for business interference (Dkt. #120) are DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment (Dkt. #133) is DENIED.

DATED this 19th day of December, 2014.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE